UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMANA GLOBAL COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KING COUNTY, *et al.*, <br><br> Defendants. | Case No. C21-637-MLP <br><br> ORDER |

## I. INTRODUCTION

This matter is before the Court on Defendants Brad Thomas, Daryl Root, and Paul Gould's ("HDR Defendants") Motion to Enforce Settlement Agreement ("Defendants' Motion"). (Defs.' Mot. (dkt. # 157).) Plaintiffs Amana Global Company and Hafid Tahraoui (together, "Plaintiffs") filed a response on the date it was due. (Pls.' Resp. (dkt. # 161); *see* W.D. Wash. Local Civil Rule 7(d)(3).) The next day, Plaintiffs filed an amended response and two declarations by Mr. Tahraoui. (Dkt. ## 162-64.) The HDR Defendants filed a reply, which included a request to strike Plaintiffs' untimely filings. (Defs.' Reply (dkt. # 170).) Plaintiffs filed a surreply. (Pls.' Surreply (dkt. # 174).) No party requested oral argument. Having considered the parties' submissions, the governing law, and the balance of the record, the Court

ORDER - 1

GRANTS Defendants' Motion (dkt. # 157). The Court GRANTS in part the HDR Defendants' request to strike (dkt. # 170).

## II.     BACKGROUND

On February 27, 2023, Plaintiffs filed their First Amended Complaint, which added the HDR Defendants and HDR, Inc. as named defendants. (Dkt. # 86 at 24-26.) Plaintiffs brought claims of violation of Washington's Consumer Protection Act and conspiracy to violate Plaintiffs' civil rights under 42 U.S.C. § 1983, alleging HDR, Inc. and the HDR Defendants acted in concert with other defendants to deny Plaintiffs relocation benefits. (*Id*.) The HDR Defendants contend "HDR Inc. has not been served" and that "HDR Engineering Inc. [is] a separate legal entity not named in this lawsuit" but that, nevertheless, both are signatories to the settlement agreement that the HDR Defendants seek to enforce. (Defs.' Mot. at 2 n.1.) The Court will refer to HDR Defendants, HDR Inc., and HDR Engineering Inc. collectively as "HDR."

Over the next few months, Plaintiffs and HDR engaged in settlement negotiations. (First Schuchman Decl. (dkt. # 158) at ¶ 3; First Tahraoui Decl. (dkt. # 163) at ¶ 3, Ex. 1 (dkt. # 163-1).) On Friday, May 12, 2023, HDR's counsel emailed Plaintiffs a "proposed Settlement Agreement" that set forth a release of all claims against HDR in exchange for a payment to Plaintiffs "within fifteen (15) business days of the execution of this Agreement by all Parties." (First Schuchman Decl. at ¶ 6, Ex. B (dkt. # 158-2) at 2-4.) The proposed agreement further provided that the parties "agree to cooperate with one another in order to sign documents and take such steps necessary to effectuate the purposes intended by this Settlement Agreement[.]" (*Id.*, Ex. B at 4.)

On the morning of Monday, May 15, 2023, the parties exchanged several emails. Plaintiffs "agree[d] with most of the proposed settlement agreement" but sought "payment within

ORDER - 2

5 days[.]"[1] (First Schuchman Decl. at ¶ 7, Ex. C (dkt. # 158-3) at 2.) HDR's counsel offered to "reduce the payment time to 10 days" and Plaintiffs responded: "**Let us agree for a 7 days instead.**" (*Id.*, Exs. D (dkt. # 158-4) at 2 (emphasis in original), E (dkt. # 158-5) at 2.) HDR's counsel agreed, stating that "HDR can do seven days after it receives the attached and a signed Settlement Agreement." (*Id.*, Ex. E at 2.) Regarding the "attached," HDR's counsel explained: "Just supply the company information and complete the W9." (*Id.*) Thirty minutes later, HDR's counsel emailed Plaintiffs again with a "final version" of the settlement agreement, which altered the language to provide that HDR shall pay Plaintiffs "within seven (7) business days of the execution of this Agreement by all Parties and receipt of a W9 and Supplier Payment Information from [Plaintiffs]." (*Id.*, Ex. F (dkt. # 158-6) at 3.)

Plaintiffs claim they "[i]mmediately objected" to the request for a W-9. (Second Tahraoui Decl. (dkt. # 164) at ¶ 8.) However, the record contains no evidence of further communications until Wednesday, May 17, 2023, when Plaintiffs emailed HDR's counsel regarding the taxability of settlement payments. (First Tahraoui Decl., Ex. 7 (dkt. # 163-7) at 10.) On May 19, 2023, HDR's counsel emailed Plaintiffs, stating that HDR would give Plaintiffs either the full settlement amount if a W-9 was received or "the payment minus 24% backup withholding[.]" (Second Schuchman Decl. (dkt. # 171), Ex. A (dkt. # 171-1) at 2.)

After an exchange of emails over the next few weeks, on June 3, 2023, Plaintiffs explained that they would be willing to settle for a higher payment—equal to the original settlement payment plus a sum that would account for 24% tax liability—and would provide a

---

[1] Plaintiffs also requested "the agreement to reflect that non[e] of the other Defendants are released from liability as a result of this settlement" but later acknowledged that it already did. (First Schuchman Decl., Exs. C (dkt. # 158-3) at 2, D (dkt. # 158-4) at 2.)

ORDER - 3

W-9. (First Tahraoui Decl., Ex. 6 (dkt. # 163-6) at 2.) On June 7, 2023, the HDR Defendants filed the instant motion to enforce the settlement agreement. (Defs.' Mot.)

### III.   DISCUSSION

#### A.   Plaintiffs' Untimely Filings

Plaintiffs filed a timely response brief to Defendants' Motion on June 26, 2023, minutes before the midnight deadline. (Pls.' Resp; Pls.' Surreply at 2.) Between 8:00 am and noon on June 27, 2023, Plaintiffs filed an amended response and two declarations by Mr. Tahraoui. (Dkt. ## 162-64; Pls.' Surreply at 2.)

The HDR Defendants request the Court strike the untimely documents, claiming prejudice based on the truncated time to file a reply. (Defs.' Reply at 2.) Plaintiffs argue the HDR Defendants were not prejudiced because the "late filing was very minor." (Pls.' Surreply at 2.)

The HDR Defendants' request to strike is well taken. What Plaintiffs fail to appreciate is that the prejudice is based not only on the reduced amount of time to reply to Plaintiffs' response, but the uncertainty as to which response brief to address. (*See* Defs.' Reply at 2 n.1 ("HDR addresses the untimely arguments herein out of caution."); *see also id.* at 6 n.3.) Plaintiffs' amended response did not merely correct typographical errors, but raised new arguments.[2] (*Compare* dkt. # 161 *with* dkt. # 162.) Plaintiffs request, in their surreply, that the Court "accept their late filing because of circumstances outside their control"—namely, "mouth infection and tooth pain for over a week" out of three weeks' time to file their response. (Pls.' Surreply at 2-3.) This request does not land well with the Court as Plaintiffs have a long history of flouting this Court's deadlines. In this instance, Plaintiffs submitted a placeholder filing and

---

[2] Nevertheless, the Court has reviewed the untimely amended response and concluded that the additional arguments therein would not have affected its resolution of Defendants' Motion.

ORDER - 4

then made substantial changes in later 'amended' filings. More troublesome is the fact that Plaintiffs' practice of filing placeholders and amending later, or just ignoring deadlines altogether and filing late, has permeated the entire case. (*See, e.g.*, dkt. ## 180-84.) Accordingly, the Court finds the Plaintiffs' reasoning for the late filing to be unsubstantiated and strikes Plaintiffs' amended response brief (dkt. # 162) as untimely.

Regarding Plaintiffs' declarations, however, the Court finds any prejudice to the HDR Defendants is minimal. The declarations describe and attach only communications between Plaintiffs and the HDR Defendants, and thus provide no new information that the HDR Defendants did not already have. (*See* dkt. ## 163-64.) Accordingly, the Court declines to strike the declarations.

**B.      Motion to Enforce Settlement**

The HDR Defendants contend that HDR's agreement to make payment within seven days, as requested by Plaintiffs, concluded "all negotiating on material terms." (Defs.' Mot. at 4.) The HDR Defendants seek to enforce the "agreed upon written Settlement Agreement[.]" (*Id.* at 5.) Plaintiffs acknowledge that, "[o]n May 15, 2023, Plaintiffs reviewed and agreed to a proposed settlement agreement by HDR Defendants." (Pls.' Resp. at 2.) Plaintiffs contend, however, that HDR's request for a W-9 was an alteration of material terms, "which should preclude enforcement of the settlement." (*Id.* at 9.)

*1.      Legal Standards*

The parties agree that this Court has authority to enforce an agreement to settle a case pending before it and that a settlement agreement is a contract that should be interpreted according to applicable state law. (*See* Defs.' Mot. at 5-6; Pls.' Resp. at 2-3.) It is "well established that the trial court has power to summarily enforce on motion a settlement agreement

ORDER - 5

entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (citation omitted). In this case, Washington state law applies. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."); *Condon v. Condon*, 177 Wn.2d 150, 162 (Wash. 2013) (In Washington, "[s]ettlements are considered under the common law of contracts.").

Creation of a contract requires an offer and acceptance of the offer. *See, e.g.*, *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wn.2d 120, 126 (Wash. 1994). "Generally, a purported acceptance which changes the terms of the offer in any material respect operates only as a counteroffer, and does not consummate the contract. However, an acceptance can also request a modification of terms, so long as the additional terms are not conditions of acceptance and the acceptance is unequivocal." *Id.* (citation omitted).

2.   *Formation of Settlement Contract*

With Plaintiffs' first email on May 15, 2023, the parties reached agreement on all terms except the date of payment. (First Schuchman Decl., Ex. C at 2 ("[Plaintiffs] agree with most of the proposed settlement agreement. However, [Plaintiffs] want to complete this settlement asap, therefore [Plaintiffs] propose payment within 5 days or shorter . . . .").) Later that morning, after a series of counteroffers, the final term was agreed upon when Plaintiffs' offer of seven days was accepted by HDR. (*Id.*, Exs. D at 2 ("Let us agree for a 7 days" (emphasis omitted)), E at 2 ("HDR can do seven days").) Accordingly, a contract was formed. *See Sea-Van Invs. Assocs.*, 125 Wn.2d at 126. This contract was in the form of the document that HDR emailed Plaintiffs on May 12, 2023, but with the payment time altered to seven days rather than fifteen. (*See* First Schuchman Decl., Ex. B at 3-6.)

1    Plaintiffs make a series of arguments in an attempt to defeat this simple conclusion. First, Plaintiffs acknowledge the parties' agreement on May 15, 2023, but argue that HDR requesting a W-9, or later inserting language into the written agreement to require the W-9, precludes enforcement of the settlement contract. (Pls.' Resp. at 9.) Regarding the later inserted language, Plaintiffs are correct that they did not accept this proposed amendment to the settlement contract. However, Plaintiffs offer no authority for their argument that HDR making additional requests later somehow nullified the settlement contract that had already been formed.

Regarding HDR's acceptance that also included a request for a W-9, Plaintiffs argue that "there was no meeting of the minds about the request for IRS W-9[.]" (Pls.' Resp. at 9.) Plaintiffs argue that they "are repudiating the agreement because the request for W-9 was never part of the agreement[.]" (*Id.* at 8.) Although HDR's acceptance included a request to modify terms to include the W-9 requirement, under Washington law, it was still an effective acceptance because it was unequivocal. *See Sea-Van Invs. Assocs.*, 125 Wn.2d at 126. As HDR notes in its reply brief, "the W-9 is not a requirement to settle." (Defs.' Reply at 3.) HDR made this clear in its email exchange with Plaintiffs, explaining on May 19, 2023, that it would give Plaintiffs either the entire payment if a W-9 had been provided or the remaining payment after backup withholding, in order to comply with tax laws. (Second Schuchman Decl., Ex. A at 2.)

Plaintiffs argue that no contract was formed because they did not agree on the W-9 and "tax implication is a material term for real estate and other non-real estate contracts." (Pls.' Resp. at 10 (citing *Sea-Van Invs. Assocs.*, 125 Wn.2d at 128).) Plaintiffs' argument is based on a misunderstanding of *Sea-Van*. In that case, the Washington Supreme Court held that no contract to sell real property had been formed because nearly all of the "13 material terms of a real estate contract"—including "payment of taxes"—were absent. *Sea-Van Invs. Assocs.*, 125 Wn.2d at

ORDER - 7

128 ("There was no meeting of the minds here as to any of the material terms of the contract except for the price."). The court rejected the argument that the law applicable to "real estate contracts" should not apply "in the deed of trust context." *Id*. There is no support for Plaintiffs' argument that this holding in *Sea-Van Invs. Assocs.* applies outside the real property context to settlement contracts.

Plaintiffs argue that if they had known about the "request for W-9, Plaintiffs would not have settled for less than $80,000 to cover tax implication." (Pls.' Resp. at 9.) Plaintiffs argue that being required to fill out a W-9 is a change in the agreement and "these changes in agreement are substantial because they reduce the settlement payment by 24-30%[,]" depending on their income tax rate. (Pls.' Resp. at 6; *see also id.* at 9 (request for W-9 "is a material term").) Plaintiffs are mistaken. Their income tax liability on a settlement payment is determined by law, not by the settlement contract, regardless of whether HDR reports the payment based on a W-9 or forwards backup withholding to the IRS. Accordingly, Plaintiffs' argument that their income tax liability is a "material term" of the settlement contract fails.

As the HDR Defendants contend, Plaintiffs' arguments are based on a mistake of law that is not sufficient to void the contract. (Defs.' Mot. at 7-8.) "A mistake of law is an erroneous conclusion with respect to the legal effect of known facts. A mistake of law, in the absence of fraud or some like cause, is not a ground for avoidance of a contract." *Schwieger v. Harry W. Robbins & Co.*, 48 Wn.2d 22, 24 (Wash. 1955). Plaintiffs' failure to anticipate the income tax consequences of the settlement contract—or disagreement with HDR as to what the income tax consequences are—does not nullify the settlement contract as formed.

The parties extensively discuss whether the settlement payment would be subject to tax liability. (*See* Defs.' Mot. at 8-12; Pls.' Resp. at 7-8, 10-13; Defs.' Reply at 5-7.) That issue is

not before this Court, however. While HDR must determine and meet its tax-related legal obligations in performing under the settlement contract, whether by reporting the payment or utilizing backup withholding, and Plaintiffs must determine and satisfy their own income tax obligations, none of those issues need be decided by this Court in adjudicating the HDR Defendants' Motion.

Plaintiffs also argue that the HDR Defendants, as employees of HDR and not the payors of the settlement payment, are not required to request a W-9 and therefore have "no standing" to request a W-9. (Pls.' Resp. at 4.) Plaintiffs again misconstrue the issue before this Court. The HDR Defendants are parties in this action and parties to the settlement agreement. Therefore, they are entitled to bring this motion to enforce the settlement agreement. *See In re City Equities Anaheim, Ltd.*, 22 F.3d at 957. The HDR Defendants' Motion seeks to enforce the settlement by requiring Plaintiffs to dismiss the claims against them in exchange for a settlement payment.

Plaintiffs argue that HDR "intentionally did not disclose their need for W-9 in order to settle for less money or at least conceal the tax implications from the Plaintiffs." (Pls.' Resp. at 8.) As evidence, Plaintiffs state that HDR is "represented by two experienced counsels from a large law firm, one [with] more than 20 years['] experience in commercial litigation and very familiar[] with a request for W-9, filing of 1099, and tax implication in a settlement." (*Id.* at 8-9.) Even accepting Plaintiffs' assertion as true, counsels' experience is not evidence of fraud that could nullify the settlement contract. Counsel are expected to use their knowledge and experience on behalf of their clients, not opposing parties. Plaintiffs offer no evidence that HDR's counsel perpetrated any fraud in the course of settlement negotiations.

Plaintiffs next argue that even if "not intentional, the negligence or the mistake of [not disclosing the need for a W-9] renders the settlement agreement unenforceable." (Pls.' Resp. at

9.) As discussed above, Plaintiffs are incorrect. The W-9 is not a term of the settlement contract, and HDR's request for a W-9 did not nullify the settlement contract.

Finally, Plaintiffs claim HDR Engineering Inc. "was properly sued and served." (Pls.' Resp. at 13-14.) This issue is not relevant to adjudication of the HDR Defendants' Motion, and thus, the Court need not address it. There is no dispute that the HDR Defendants are properly before this Court in this matter.

Accordingly, the Court concludes the HDR Defendants have established that a settlement contract was formed and is enforceable. However, to the extent the HDR Defendants request the Court "order Plaintiffs to provide their W-9 information," that request is denied as providing a W-9 was not part of the settlement contract as formed. (Defs.' Mot. at 12.)

        3.        *Breach of Confidentiality Provision*

Plaintiffs seek damages because, "[u]nder the settlement agreement, HDR Defendants were required to 'keep confidential the amount of the settlement payment' but failed to do so by disclosing the amount in their motion and exhibits." (Pls.' Resp. at 14 (quoting First Schuchman Decl., Ex. B at 4).) Plaintiffs fail, however, to identify any damages they have suffered. Plaintiffs also publicly filed information from which the approximate settlement amount can be easily calculated, undermining any argument that they are harmed by its disclosure. (*See* First Tahraoui Decl., Ex. 6 at 2.)

Plaintiffs also attempt to argue that breach of the settlement contract "effectively removed" the confidentiality provision, altering the agreement and thereby rendering it unenforceable. (Pls.' Resp. at 14.) Plaintiffs are mistaken. Formation of the contract on May 15, 2023, was not retroactively undone by a later alleged breach of the contract. *Cf. Trendwest Resorts, Inc. v. Ford*, 103 Wn. App. 380, 389 (Wash. App. Div. 1, 2000), *rev'd on other*

ORDER - 10

*grounds*, 146 Wn.2d 146 (Wash. 2002) (Distinguishing between contract formation and interpretation because otherwise "[a]ny contracting party found in breach would argue, as Trendwest did here, that there was never a meeting of the minds as to the nature of the obligation, and the concept of contract interpretation would, in effect, be rendered a nullity.").

### C. Attorneys' Fees

The HDR Defendants seek an award of attorneys' fees and costs for preparation of the instant motion. (Defs.' Mot. at 12.) Plaintiffs oppose an award because the "HDR Defendants have not substantially prevailed in their claim" and "deliberately delayed" Plaintiffs' efforts to resolve the dispute. (Pls.' Resp. at 15-16.) Plaintiffs also argue that an award of attorneys' fees "is not equitable" because their position was "well grounded in fact, and warranted by existing law or a good faith argument, and not interposed for any improper purpose." (*Id.* at 16.)

"The district court ha[s] inherent power to enforce the agreement in settlement of litigation before it, [including] authority to award damages for failure to comply with the settlement agreement." *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986). Here, the settlement contract provides that any party "that substantially prevails in any dispute or claim arising from this Agreement will be entitled to recover its actual expenses associated with the dispute or claim including . . . reasonable attorneys' fees and recoverable costs." (First Schuchman Decl., Ex. B at 5.)

An award of attorneys' fees and costs is consistent with the parties' agreement. Plaintiffs' arguments to the contrary are unavailing. First, the HDR Defendants have substantially prevailed in their effort to enforce the settlement contract; Plaintiffs' implication that the goal of the motion was solely or primarily to obtain a W-9 is belied by the record. (*See* Pls.' Resp. at 15.) Second, even if the HDR Defendants deliberately waited three weeks before filing their motion,

ORDER - 11

nothing in the settlement contract suggests this would abrogate the attorneys' fees provision. Finally, even if Plaintiffs' position was well grounded, the HDR Defendants have prevailed and, according to the settlement contract, are therefore entitled to an award of attorneys' fees and costs.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the HDR Defendants' Motion (dkt. # 157), including the request for attorneys' fees. The HDR Defendants are directed to submit an affidavit of reasonable attorneys' fees and costs incurred in connection with preparing their Motion within **fourteen (14) days** of this Order.

The Court GRANTS in part the HDR Defendants' request to strike (dkt. # 170) Plaintiffs' untimely filings. The Clerk is directed to strike Plaintiffs' amended response brief (dkt. # 162).

Dated this 4th day of August, 2023.

                                                            MICHELLE L. PETERSON
                                                            United States Magistrate Judge