1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMANA GLOBAL COMPANY, *et al.*,

                Plaintiffs,

    v.

KING COUNTY, *et al.*,

                Defendants.

Case No. C21-637-MLP

ORDER

## I.      INTRODUCTION

This matter is before the Court on the following motions, both filed on July 6, 2023: (1) Defendants King County, Josh Baldi, John Taylor, Michael Murphy, Linda Holecek, and Brad Schabert's (collectively, "Defendants") Motion for Summary Judgment ("Defendants' Motion" (dkt. # 175)); and (2) *pro se* Plaintiffs Hafid Tahraoui and his sole proprietorship, Amana Global Company's, (together, "Plaintiffs") Motion for Partial Summary Judgment ("Plaintiffs' Motion" (dkt. # 180)). On July 7, 2023, Plaintiffs filed an "amended" version of their Motion and additional declarations and exhibits totaling over 200 pages. (Dkt. ## 182-84.)

Defendants filed an opposition to Plaintiffs' Motion (Defs.' Resp. (dkt. # 202)), which included a request to strike the amended version of Plaintiffs' Motion as untimely (*id.* at 5), and

1    Plaintiffs filed a reply (Pls.' Reply (dkt. # 208)). Plaintiffs filed an opposition to Defendants'

2    Motion (Pls.' Resp. (dkt. # 205)), Defendants filed a reply (Defs.' Reply (dkt. # 206)), and

3    Plaintiffs filed a surreply (Pls.' Surreply (dkt. # 211)) and a notice of supplemental authority

4    (Pls.' Supp. Auth. (dkt. # 212)). Plaintiffs requested oral argument on their Motion and on

5    Defendants' Motion. (Pls.' Mot.; Pls.' Resp.) The Court held oral argument on August 29, 2023.

6    (Dkt. # 222.)

7          Having considered the parties' submissions, oral argument, the governing law, and the

8    balance of the record, the Court GRANTS Defendants' Motion (dkt. # 175) and DENIES

9    Plaintiffs' Motion (dkt. # 180). The Court GRANTS Defendants' request to strike Plaintiffs'

10   Amended Motion (dkt. # 182).[1]

11                           **II.        BACKGROUND**

12         This case arises from King County's efforts to relocate tenants, including Plaintiffs, from

13   a warehouse property that King County purchased in order to implement a flood management

14   project. Plaintiffs occupied the property under a lease valid through August 2021. (First Tahraoui

15   Decl. (dkt. # 181) at ¶ 3.)

16         **A.        Relocation, Condemnation, and Eviction Proceedings**

17         In July 2016, Ms. Holecek, a King County relocation manager, sent Plaintiffs and other

18   tenants a general notice of relocation rights. (Holecek Decl. (dkt. # 179) at ¶ 4.) On August 30,

19   2016, King County sent a 90-day notice letter informing Plaintiffs that they were required to

20   move but not before December 5, 2016. (*Id.*, Ex. 2 at 11.) The letter stated Plaintiffs were

21   "eligible to receive relocation assistance in accordance with . . . 42 U.S.C. 4601 *et seq.*, [the

22

23   _____

[1] Plaintiffs provide no reason for the late filing. As discussed in a previous Order, Plaintiffs' "troublesome . . . practice of filing placeholders and amending later, or just ignoring deadlines altogether and filing late, has permeated the entire case." (Dkt. # 213 at 4-5.) Finding no good cause, the Court strikes Plaintiffs' amended motion as untimely.

Uniform Relocation Act], and . . . RCW 8.26 [the Washington Relocation Assistance Act]." (*Id.*) The letter noted that Plaintiffs "may select a commercial move, a self-move based on the successful move bid or a specialist move estimate, an actual cost self-move, or a combination[.]" (*Id.*) On January 25, 2017, King County sent a second 90-day notice letter, stating Plaintiffs would not be required to move before April 30, 2017. (*Id.*, Ex. 3 at 17.)

On June 1, 2017, King County sent a letter providing Plaintiffs "a summary of relocation entitlements [that] may be eligible for reimbursement based on estimates[.]" (First Tahraoui Decl., Ex. 4 at 73.) "Moving Entitlements" totaled over $1.177 million, and "Reestablishment Entitlements" totaled $50,000. (*Id.*) On September 25, 2017, Brad Schabert, a King County acquisitions manager, sent Plaintiffs a letter "acknowledg[ing] that the lease provides you with the right to stay at this location through August 2021 as long as you are in good standing under the lease." (Second Tahraoui Decl. (dkt. # 209) at ¶ 3, Ex. 1.)

On October 2, 2017, Plaintiffs sent King County a "Demand Letter" claiming $2.462 million in damages, including $1.457 million for "leasehold interest value." (First Briggs Decl. (dkt. # 176) at ¶ 2, Ex. 1.) In January 2018, King County obtained a professional appraisal that opined "the prospective value of the leasehold interest" was $220,000. (*Id.* at ¶ 3, Ex. 2 at 15.) In June 2018, King County offered Plaintiffs $220,000 for the value of the lease, in addition to benefits under the Washington Relocation Assistance Act, but Plaintiffs rejected the offer. (*Id.* at ¶¶ 4-5, Exs. 3 at 87, 4 at 90.)

In July 2018, King County filed a petition for condemnation in King County Superior Court, seeking a decree of appropriation of Plaintiffs' leasehold and a determination of just compensation. (First Briggs Decl. at ¶ 6, Ex. 5 at 93-96.) After August 2018, Plaintiffs were the only tenant occupying the warehouse. (Holecek Decl. at ¶ 14.)

1    In October 2018, the King County Superior Court entered an order finding public use and

2    necessity, and Plaintiffs appealed. (First Briggs Decl. at ¶ 7, Ex. 6 at 192.) A judgment creditor

3    of Plaintiffs', Pan Abode Homes, obtained Plaintiffs' interest in the condemnation action at a

4    sheriff's auction and was substituted for Plaintiffs. (*Id.* at ¶ 8, Exs. 6 at 192-93, 7 at 201.) Pan

5    Abode Homes and King County stipulated to dismissal of the appeal and to a decree of

6    appropriation in condemnation for $170,000, which the Superior Court granted on November 12,

7    2019. (*Id.*, Ex. 6 at 190, 193-94.)

8    On November 22, 2019, King County sent a notice to vacate and a 30-day notice letter

9    informing Plaintiffs they were required to move by December 31, 2019. (First Tahraoui Decl.,

10   Exs. 1 at 34, 2 at 37.) In January 2020, King County filed a complaint for unlawful detainer

11   because Plaintiffs had not moved. (First Briggs Decl. at ¶ 9, Ex. 8 at 208.)

12   Nevertheless, King County continued to negotiate with Plaintiffs, while making clear that

13   the County would proceed with unlawful detainer if Plaintiffs did not cooperate. (*See* Baldi Decl.

14   (dkt. # 178) at ¶¶ 9-13, Exs. 1 at 14 ("If at any time Amana does not honor the process and terms

15   set forth above, the County reserves the right to proceed with the unlawful detainer action."),

16   2-3.) In July 2020, Plaintiffs signed a new lease for a warehouse in Chehalis. (First Tahraoui

17   Decl. at ¶ 34.) King County directly paid Plaintiffs $90,625 in July through December 2020,

18   based on assurances that Plaintiffs would complete the relocation by December 31, 2020. (Baldi

19   Decl. at ¶¶ 14-22, Exs. 4-8.)

20   On December 1, 2020, Plaintiffs sought an additional extension to April 2021. (Baldi

21   Decl. at ¶¶ 22-25, Exs. 9-10.) King County did not grant the extension request, and Plaintiffs

22   were evicted on May 10, 2021. (First Briggs Decl., Ex. 14; First Tahraoui Decl. at ¶ 43.)

23   Between June and November 2021, King County paid approximately $2.542 million for movers

to transport Plaintiffs' property to storage and later to the warehouse in Chehalis that Plaintiffs had rented. (Baldi Decl. at ¶¶ 26-30, Exs. 11, 12 at 91.) King County directly paid Plaintiffs $70,008 "for work [Mr. Tahraoui] did within his warehouse and for supervising [the movers'] placement of his personal property within the warehouse between September 2021 and February 2022." (*Id.* at ¶ 31.)

Plaintiffs appealed the eviction order, and the Washington Court of Appeals affirmed on November 28, 2022. (First Briggs Decl. at ¶ 16, Ex. 15.) The Court of Appeals found that "the lease agreement terminated by its terms, upon condemnation," as of November 12, 2019. (*Id.* at 318-19.) The Court also found that "King County provided [Plaintiffs] more than 90 days' notice to vacate the Property, while [they] lawfully occupied the Property[,]" in compliance with the Uniform Relocation Act and the Washington Relocation Assistance Act, but once the lease terminated, Plaintiffs "no longer had any right or title to occupy the Property and became . . . 'unlawful occupant[s],' who [were] not entitled to further notice" under both statutes. (*Id.* at 320-21.) Plaintiffs appealed to the Washington Supreme Court, which denied review on July 12, 2023. (Second Briggs Decl. (dkt. # 203) at ¶ 2, Ex. A.)

**B.      Plaintiffs' State Court Actions**

On July 18, 2019, Plaintiffs filed suit in King County Superior Court against King County and other entities, alleging, as in the instant action, that King County unreasonably delayed relocation benefits, improperly failed to compensate Plaintiffs for their leasehold interest, and retaliated against and harassed them. (*Compare* Compl. (dkt. # 1) at ¶¶ 16-23 *with* First Briggs Decl. at ¶ 18, Ex. 16 at ¶¶ 16-21.) Plaintiffs asserted claims for breach of contract, fraud and negligent misrepresentation, unjust enrichment, breach of quiet enjoyment, breach of good faith and fair dealing, tortious interference with business expectancy, Washington

Consumer Protection Act violation, civil conspiracy, promissory estoppel, inverse condemnation, and violations of substantive due process and the privileges and immunities clauses of the Washington State Constitution. (First Briggs Decl., Ex. 16 at ¶¶ 22-76.)

In their substantive due process claim, Plaintiffs alleged "throughout the acquisition and relocation process" the defendants "acted in an arbitrary and capricious manner[.]" (First Briggs Decl., Ex. 16 at ¶ 71.) In their privileges and immunities claim, Plaintiffs alleged "throughout the acquisition and relocation process" the defendants "treated Plaintiffs differently from similarly situated persons[.]" (*Id.* at ¶ 75.) The Superior Court dismissed several claims as a matter of law, including the constitutional claims, and a jury delivered a verdict in favor of King County on the remaining claims. (First Briggs Decl. at ¶¶ 19-20, Exs. 17-18.) Plaintiffs appealed. (*Id.* at ¶ 21, Ex. 19.)

On March 18, 2023, Plaintiffs filed in Lewis County Superior Court a petition for judicial review of King County's administrative decision not to reimburse Plaintiffs for travel time and mileage expenses for traveling to his warehouse to supervise movers. (First Briggs Decl. at ¶ 23, Ex. 21.)

### C.     Plaintiffs' Federal Court Actions

Plaintiffs filed the instant action on May 13, 2021. (Compl.) Plaintiffs assert two declaratory claims: violation of Fourteenth Amendment procedural due process, and "equitable preemption"; and three causes of action: deprivation of Fourteenth Amendment procedural due process, deprivation of Fourteenth Amendment equal protection, and conspiracy to violate due process and equal protection rights under 42 U.S.C. § 1983. (Am. Compl. (dkt. # 86) at 15-26, ¶¶ 85-163.)

On November 14, 2022, Plaintiffs filed another action in this Court against Pan Abode Homes and several of the King County Defendants, premised largely on the same events as in the instant action and the King County Superior Court civil action. (*Amana Global Co. et al. v. King County Flood Control Zone Dist. et al.*, Case No. C22-1626 (W.D. Wash.), dkt. # 1 at ¶¶ 19-24.) Plaintiffs alleged several constitutional under claims § 1983. (*Id.* at ¶¶ 37-55.) The Court dismissed the action for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine. (*Id.*, dkt. # 46.) The Court rejected Plaintiffs' arguments that *Rooker-Feldman* did not apply because they were not directly attacking the judgment entered in the condemnation proceeding. (*Id.* at 8.) The Court noted that "[e]ach of Plaintiffs' claims arise from Defendants' involvement in the Condemnation Action" and held that, to adjudicate Plaintiffs' claims that Pan Abode Homes never properly acquired Plaintiffs' leasehold, "this court would necessarily have to review the Superior Court's orders and judgments authorizing Defendants' actions and declaring Defendants' rights." (*Id.* at 5, 10.)

## III.    DISCUSSION

Defendants contend that, under the *Rooker-Feldman* doctrine as well as *res judicata* and collateral estoppel principles, Plaintiffs' claims must be dismissed to the extent they seek to overturn or review state court adjudication of the same issues. (Defs.' Mot. at 8-13.) Defendants also contend Plaintiffs fail to establish that any County policy violated their constitutional rights; Plaintiffs fail to identify membership in any protected class for equal protection purposes; and Plaintiffs fail to show participation in the harm alleged by the individually named defendants, who in any case are entitled to qualified immunity. (*Id.* at 13-26.)

Plaintiffs contend that Washington statutes and administrative codes are unconstitutional as applied because they violated Plaintiffs' right to procedural due process under the Fourteenth

1    Amendment, and are preempted by the Uniform Relocation Act. (Pls.' Mot. at 2-3.) Plaintiffs

2    argue that Defendants acted out of "discriminatory animus" to deprive them of relocation

3    benefits. (*Id.* at 15-18.) Plaintiffs also contend this "Court should enter an Order awarding

4    Plaintiffs relocation benefits pursuant to Ch. 8.26 RCW, WAC 468-100, and 49 CFR 24" totaling

5    over $1.7 million. (*Id.* at 18-19.)

6          **A.**    **Summary Judgment Standards**

7          Summary judgment is appropriate when the "movant shows that there is no genuine

8    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

9    Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is

10   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

11   showing on an essential element of his case with respect to which he has the burden of proof.

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden

13   of showing the Court "that there is an absence of evidence to support the nonmoving party's

14   case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence

15   that negates an essential element of the nonmovant's case or by establishing that the nonmovant

16   lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins.*

17   *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the

18   nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

19   *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in

20   favor of the nonmoving party. *Id.* at 585-87.

21         Genuine disputes are those for which the evidence is such that a "reasonable jury could

22   return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's

23   responsibility to "identify with reasonable particularity the evidence that precludes summary

1   judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The

2   Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source

3   omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but

4   it may consider other materials in the record."). Nor can the nonmoving party "defeat summary

5   judgment with allegations in the complaint, or with unsupported conjecture or conclusory

6   statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see*

7   *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

8        **B.    *Rooker-Feldman* Doctrine and Preclusion**

9        Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter

10   jurisdiction to review the final determinations of a state court in judicial proceedings. *Dist. of*

11   *Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Tr. Co.*, 263

12   U.S. 413, 415-16 (1923); *see also Doe & Assocs. L. Offs. v. Napolitano*, 252 F.3d 1026, 1030

13   (9th Cir. 2001) ("The purpose of the doctrine is to protect state judgments from collateral federal

14   attack."). "[T]his doctrine applies even where the challenge to the state court decision involves

15   federal constitutional issues." *Doe & Assocs. L. Offs.*, 252 F.3d at 1029.

16        *Rooker-Feldman* applies when a "plaintiff asserts as a legal wrong an allegedly erroneous

17   decision by a state court, and seeks relief from a state court judgment based on that decision" and

18   "may also apply where the parties do not directly contest the merits of a state court decision, as

19   the doctrine 'prohibits a federal district court from exercising subject matter jurisdiction over a

20   suit that is a *de facto* appeal from a state court judgment.'" *Reusser v. Wachovia Bank, N.A.*, 525

21   F.3d 855, 859 (9th Cir. 2008) (quoting *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir.

22   2007); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)). A federal action is a *de*

23   *facto* appeal where "claims raised in the federal court action are 'inextricably intertwined' with

the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)). In such circumstances, "the [d]istrict [c]ourt is in essence being called upon to review the state court decision." *Feldman*, 460 U.S. at 483 n.16.

Claim and issue preclusion also limit the matters a court may adjudicate but, by contrast, are not jurisdictional. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter."). For both claim preclusion and issue preclusion, federal courts must "apply the rules of a particular state to judgments issued by courts of that state." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Accordingly, here the Court applies Washington law and rules to interpret the preclusive effect of Washington court decisions.

"*Res judicata*, or claim preclusion, prohibits the relitigation of claims and issues that were litigated, or could have been litigated, in a prior action." *Pederson v. Potter*, 103 Wn. App. 62, 67 (Wash. Ct. App. 2000). Under Washington law, for claim preclusion to apply, a prior judgment must be final and must have a concurrence of identity with a subsequent action in: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763 (Wash. 1995). Though "it is not necessary that all four factors favor preclusion to bar the claim," *see Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161, 1166 (W.D. Wash. 2014) (citations omitted), *res judicata* is also not applied in all situations where the elements of the doctrine are met. *Reeves v. Mason Co.*, 22 Wn. App. 2d 99, 116-17 (Wash. Ct. App. 2022) (discussing circumstances in which *res judicata* is not applied, including exceptions made on the

basis of public policy or "when the circumstances behind the case do not serve the doctrine's purposes").

Issue preclusion, also referred to as collateral estoppel, bars the relitigation of issues decided in a previous proceeding involving the same parties. *Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 899 (Wash. 2018). The Court considers four factors when deciding whether issue preclusion applies: (1) whether the issue decided in the prior action was identical to the issue presented in the second action; (2) whether the prior action ended in a final judgment on the merits; (3) whether the party to be estopped was a party or in privity with a party in the prior action; and (4) whether the application of the doctrine will work an injustice. *Id.* (citing *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507 (Wash. 1987)). In addition, the issues to be precluded must have been actually litigated and necessarily decided in the first proceeding. *Id.* Further, the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issues in the first proceeding. *Id.*

**C.      Analysis**

Citing *Exxon Mobil Corp.*, Plaintiffs argue that *Rooker-Feldman* does not apply because their appeal from the condemnation action was still pending before the Washington Court of Appeals when they filed this action. (Pls.' Resp. at 6-7.) Defendants do not directly address the issue on reply. (*See* Defs.' Reply at 4 (citing *Exxon Mobil Corp.*).) In *Exxon Mobil Corp.*, the Supreme Court limited the "*Rooker-Feldman* doctrine [to] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered *before the district court proceedings commenced* and inviting district court review and rejection of those judgments."[2] 544 U.S. at 284 (emphasis added); *see also Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602,

---

[2] This issue does not appear to have been raised in the related federal action. (*See* Case No. C22-1626 (W.D. Wash.), dkt. # 45.)

604 (9th Cir. 2005) ("[S]tate court proceedings ended for *Rooker-Feldman* purposes when the

Oklahoma Supreme Court denied Mothershed's request that it issue a writ of mandamus[.]").

Nevertheless, issue and claim preclusion principles still apply. In *Exxon Mobil Corp.*, the

Court held that "[d]isposition of the federal action, once the state-court adjudication is complete,

would be governed by preclusion law. The Full Faith and Credit Act, 28 U.S.C. § 1738, . . .

requires the federal court to 'give the same preclusive effect to a state-court judgment as another

court of that State would give.'" 544 U.S. at 293 (quoting *Parsons Steel, Inc. v. First Alabama*

*Bank*, 474 U.S. 518, 523 (1986)).

       1.    *Plaintiffs became unlawful occupants, not displaced persons, after the*
              *November 12, 2019 decree of condemnation*

Plaintiffs argue that: (1) they were not unlawful occupants; and (2) even if they were,

they "are still displaced persons and entitled to relocation assistance." (Pls.' Surreply at 4.)

Plaintiffs' first argument fails because the Washington Superior Court, Court of Appeals,

and Supreme Court have made a final determination that, after November 12, 2019, the leasehold

was condemned, thereupon terminating by its own provisions, and that Plaintiffs accordingly

became unlawful occupants. (First Briggs Decl., Exs. 6, 15; Second Briggs Decl., Ex. A; *see also*

Pls.' Reply at 6 n.1 (Plaintiffs "are not disputing the eviction judgment.").) Because Plaintiffs'

status as unlawful occupants was actually litigated and necessarily decided by a final judgment

on the merits, after Plaintiffs had a full and fair opportunity for litigation in the state courts, and

because there is no indication that application of the doctrine will work an injustice,[3] issue

preclusion prevents relitigation in this Court. *See Sprague*, 189 Wn.2d at 899. There is no

---

[3] Plaintiffs assert "the ruling will work an injustice" with regard to the 90-day notice, but fail to provide
any support. (Pls.' Resp. at 20.) Plaintiffs cannot "defeat summary judgment . . . with unsupported
conjecture or conclusory statements." *Hernandez*, 343 F.3d at 1112.

ORDER - 12

genuine dispute over the fact that Plaintiffs became unlawful occupants after November 12, 2019.

Plaintiffs' second argument fails because displaced persons are defined, in both the Uniform Relocation Act and the Washington Relocation Assistance Act, to specifically exclude unlawful occupants. *See* 42 U.S.C. § 4601(6)(B) ("The term 'displaced person' does not include . . . a person who has been determined . . . to be . . . in unlawful occupancy of the displacement dwelling[.]"); RCW 8.26.020(4)(c) ("The term 'displaced person' does not include . . . A person who has been determined . . . to be . . . unlawfully occupying the displacement dwelling[.]"); *see also* 49 C.F.R. § 24.2(a)(9)(ii) (persons "determined to be in unlawful occupancy . . . do not qualify as displaced persons").

Plaintiffs argue that they remained displaced persons because 49 C.F.R. § 24.2(a)(9)(ii)(K) and WAC 468-100-002(9)(b)(xii) define "displaced person" to exclude persons "determined to be in unlawful occupancy prior to or after the initiation of negotiations[.]" (Pls.' Resp. at 13-14.) Plaintiffs assert they "were in lawful occupancy prior to and after the initiation of negotiations" on February 22, 2018, because they "had a valid lease through August 31, 2021, and were not in default." (*Id.* at 15.) The lease, however, terminated by its own provisions via condemnation on November 19, 2019, as the Washington Court of Appeals held. (*See* First Briggs Decl., Ex. 15 at 318-19.) Regardless of the date negotiations initiated, Plaintiffs were determined to be in unlawful occupancy either prior to or after that date, and thus the cited regulations do not support their argument.

Accordingly, the Court finds that there is no genuine dispute over the fact that, after November 12, 2019, Plaintiffs were not displaced persons.

2.      *Plaintiffs were not entitled to relocation benefits or 90-day notices*

When Plaintiffs became unlawful occupants and not displaced persons, they were no longer entitled to relocation assistance. *See* 42 U.S.C. § 4622 (providing for "payment to the displaced person"); RCW 8.26.030 (same). They were similarly not entitled to additional 90-day notices. *Cf.* 24 C.F.R. § 24.203(c) ("No lawful occupant shall be required to move unless he or she has received at least 90 days advance written notice"); WAC 468-100-203(3)(a) ("No lawful occupant shall be required to move unless the occupant has received at least ninety days advance written notice").

Plaintiffs submit a document, apparently from the Washington State Department of Transportation website, that they claim is from a manual showing "the process to be followed in acquiring property interest through condemnation or voluntary sale." (Pls.' Surreply at 4 n.1.) This document shows an unlabeled and unexplained flowchart, titled "Right of Way Requirements," where "Relocation" comes after either "Acquire Property" or "Condemnation." (*Id.*, App'x A.) Plaintiffs argue that this means that the Uniform Relocation Act "was specifically designed to help displaced person after entry of Decree" of condemnation. (*Id.* at 4.) Plaintiffs appear to argue that, even as unlawful occupants after entry of a condemnation decree, they are still entitled to relocation assistance. Nonetheless, there is no indication that a flowchart box labeled "Relocation" from the State Department of Transportation reflects an entitlement to financial relocation assistance benefits, and to interpret it as such would mean that no displaced person is entitled to any relocation assistance prior to a condemnation decree. Moreover, this flowchart cannot establish rights or entitlements in contradiction to the plain text of the statutes at issue.

1    Plaintiffs submit another document, apparently from the website of the U.S. Department

2    of Housing and Urban Development, on how to determine "[w]hether a specific household

3    member is ineligible for relocation assistance under the URA because of unlawful occupancy."

4    (Pls.' Supp. Auth. at 4.) The document's title indicates it only applies to "Residential" relocation.

5    (*Id.* at 4.) Regardless of its provenance, this document does not appear to apply to Plaintiffs'

6    situation, as they were not members of a household at the warehouse. In any case, the criteria

7    given include considering whether there are "any other documents showing unlawful residence at

8    the displacement unit[.]" (*Id.*) The decree of condemnation—as well as the Court of Appeals and

9    Supreme Court affirmances—are documents showing unlawful occupancy.

10    Plaintiffs cite to a Washington Court of Appeals case for the proposition that they are still

11    entitled to relocation assistance after condemnation. (Pls.' Supp. Auth. at 2 (citing *Pac. Coast*

12    *Shredding, L.L.C. v. Port of Vancouver, USA*, 14 Wn. App. 2d 484 (Wash. Ct. App. 2020)).) But

13    in that case, under the law of the case doctrine, there was no dispute over entitlement to

14    relocation assistance, only the amount. *See Pac. Coast Shredding, L.L.C.* at 487 (Defendant

15    "informed [plaintiff] of its right under federal and state law to receive financial compensation for

16    any reasonable and necessary costs that PCS incurred as a result of the taking."). There is no

17    indication that the tenant's lease terminated upon condemnation, as Plaintiffs' lease did here.

18    Plaintiffs also point to 49 C.F.R. § 24.206, titled "Eviction for cause," which provides

19    that "[a]ny person who occupies the real property and is not in unlawful occupancy on the date

20    of the initiation of negotiations, is presumed to be entitled to relocation payments and other

21    assistance" unless evicted for cause and "the eviction was not undertaken for the purpose of

22    evading the obligation to make available [relocation] payments and other assistance[.]" (Pls.'

23    Resp. at 15.) The regulatory comments elaborate that "[a]n eviction related to non-compliance

with a requirement related to carrying out a project (*e.g.*, failure to move or relocate when instructed, or to cooperate in the relocation process) shall not negate a person's entitlement to relocation payments and other assistance set forth in this part." 84 F.R. 69466-01. This regulation is inapplicable, however, as Plaintiffs were evicted not for cause but by operation of the lease's provisions. *Cf.* 49 C.F.R. § 24.2 ("A person who is determined to be in unlawful occupancy prior to or after the initiation of negotiations, *or* a person who has been evicted for cause" does not qualify as a displaced person. (emphasis added)). Moreover, there is no indication that the eviction was for the purpose of evading the obligation to provide relocation payments and other assistance, given that King County actually provided extensive relocation payments—over $160,000 in direct payments to Plaintiffs and over $2.5 million paid to movers to relocate Plaintiffs' property. (*See* Baldi Decl. at ¶¶ 14-22, 26-31, Exs. 4-8, 11-12.)

Plaintiffs fail to establish that they were entitled to relocation assistance after the decree of condemnation. Accordingly, all claims based on entitlement to relocation assistance must fail.

### 3.   *Declaratory Claims*

In two declaratory claims, Plaintiffs challenge: (1) RCW 59.12.030(1), the unlawful detainer statute providing that a "tenancy shall end without notice at the expiration of the specified term or period"; and (2) RCW 8.08.060, which provides for a decree of appropriation. (Am. Compl. at ¶¶ 85-119.)

In their Fourteenth Amendment procedural due process claim, Plaintiffs allege the challenged statutes, as applied to them, violated their due process rights under 49 C.F.R. § 24.203(c) of 90-day notice to "lawful occupant[s]." (Am. Compl. at ¶¶ 93, 97.) Because Plaintiffs were not lawful occupants, however, they had no entitlement to 90-day notices. Plaintiffs also allege violation of their right to relocation planning under § 24.205(a) and

relocation expenses as provided for under 49 C.F.R. § 24.301(d). (*Id.* at ¶ 93.) These benefits are only available, however, to "displaced person[s]," which Plaintiffs were not. 49 C.F.R. §§ 24.202, 24.301(a); *see also* § 24.205(a). Accordingly, Plaintiffs' due process claims must be dismissed.

In their claim for "Equitable Preemption," Plaintiffs allege the challenged statutes, as applied to them, conflict with 49 C.F.R. §§ 24.203(c) and 24.205(a), as well as § 24.207(c), which requires advanced relocation payments to reduce hardship. (Am. Compl. at ¶¶ 100-19.) Again, because Plaintiffs were not lawful occupants or displaced persons, they had no entitlement to the 90-day notice provided for under § 24.203(c) or relocation planning under § 24.205(a). And because they were not entitled to relocation payments, they were not entitled to receive such payments in advance under § 24.207(c). *See* 24 C.F.R. § 24.202 ("These requirements apply to the relocation of any displaced person"). Plaintiffs acknowledge that their "as applied preemption challenge is based on the fact that they are displaced person entitled to relocation assistance[.]" (Pls.' Reply at 6.) Accordingly, their preemption claim must be dismissed.

### 4.  Causes of Action

In their Fourteenth Amendment due process claim, Plaintiffs allege they were entitled to notice and a meaningful opportunity to be heard on "Defendants' decision to deny [them] relocation benefits." (Am. Compl. at ¶ 134.) Plaintiffs allege the decision was "arbitrary and capricious." (*Id.* at ¶ 131.)

In their equal protection claim, Plaintiffs allege Defendants "intentionally treated the Plaintiff[s] differently than other similarly situated persons when they denied [them] relocation

assistance." (Am. Comp. at ¶ 140.) Plaintiffs claim the "[o]ver a dozen businesses" that were

also displaced were similarly situated but given relocation benefits. (*Id.* at ¶ 141.)

In their conspiracy claim, Plaintiffs allege Defendants acted with other entities "to violate

Plaintiff[s'] right guaranteed under the Due process and the equal protection clauses. (Am.

Compl. at ¶ 154.)

Plaintiffs raised nearly identical constitutional claims in their King County Superior

Court civil action. (*See* First Briggs Decl., Ex. 16 at ¶¶ 71 (alleging Defendants "acted in an

arbitrary and capricious manner" "throughout the acquisition and relocation process"), 75

(alleging Defendants "treated Plaintiffs differently from similarly situated persons" "throughout

the acquisition and relocation process").) These claims were dismissed as a matter of law. (*Id.*,

Ex. 17.) Plaintiffs do not dispute that they could have alleged the federal constitutional claims in

the same proceeding.

Claim preclusion requires concurrence of identity with the prior judgment as to: (1)

persons and parties, (2) cause of action, (3) subject matter, and (4) the quality of persons for or

against whom the claim is made. *Loveridge*, 125 Wn.2d at 763. Plaintiffs and King County were

parties in the prior action, which resulted in a final judgment on the merits.[4] (First Briggs Decl.,

Ex. 16 at ¶¶ 1-2, 5.) While the individually named defendants were not parties, they were in

privity with King County for purposes of claim preclusion, as they were sued for actions

undertaken as King County employees. "The employer/employee relationship is sufficient to

establish privity." *Ensley v. Pitcher*, 152 Wn. App. 891, 902 (Wash. Ct. App. 2009).

---

[4] Unlike the *Rooker-Feldman* doctrine, preclusion applies upon entry of a final judgment even if appeal is pending. *See City of Des Moines v. Pers. Prop. Identified as $81,231 in U.S. Currency*, 87 Wn. App. 689, 702-03 (Wash. Ct. App. 1997) ("While the appeal is pending, [a plaintiff] is precluded by *res judicata* from starting a new action at the trial court level in hopes of obtaining a contrary result while the appeal is pending. Similarly, with collateral estoppel, a party is precluded from relitigating issues previously determined while an appeal as to those issues is pending." (citation omitted)).

There is also concurrence of identity of the cause of action. "While there is no specific test for determining such identity, the following criteria should be considered: (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Pederson*, 103 Wn. App. at 72. Plaintiffs' claims in this action involve substantially the same evidence and arise from the same transactional nucleus of facts as Plaintiffs' claims in the King County Superior Court civil action. King County's rights or interests as established in the prior judgment could be destroyed or impaired by prosecution of this action. This element is satisfied.

There is also concurrence of identity of the subject matter. Both actions involve the same relocation process and Plaintiffs' entitlement to relocation benefits and 90-day notices. *See Zweber*, 39 F. Supp. 3d at 1168 ("[B]oth actions seek the same remedy for substantially the same harm, giving them identity of subject matter.").

Finally, because the parties are identical or in privity, there is concurrence of identity of the quality of persons. Because all four elements are satisfied, claim preclusion prohibits litigation in this Court of Plaintiffs' constitutional claims.

The Court concludes that preclusion applies to all of Plaintiffs' claims. Accordingly, Defendants' Motion must be granted and Plaintiffs' Motion denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion (dkt. # 175) and DENIES Plaintiffs' Motion (dkt. # 180). Plaintiffs' Amended Motion (dkt. # 182) is STRICKEN.

Accordingly, this action is hereby DISMISSED.[5] All remaining pending motions (dkt. ## 185, 196, 218, 220) are DENIED as MOOT and all remaining pending deadlines and the trial date are STRICKEN.

Dated this 30th day of August, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[5] The sole remaining defendant is "MVA, LLC." (*See* Am. Compl. at ¶ 21.) Given that Plaintiffs have not served any such defendant in the six months since the Amended Complaint was filed, and that the motions practice before this Court indicates no such entity exists, MVA, LLC is hereby DISMISSED as a defendant. *See* Fed. R. Civ. P. 4(m); dkt. # 214 at 6.

ORDER - 20